IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PENNY H. ROSE,

        Plaintiff,

v.                                          CIV 13-0593 JB/KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition. *Doc. 8.* Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion to remand be denied and the decision of the Commissioner affirmed.

**I.    Procedural History**

Plaintiff filed initial applications with the Social Security Administration for Title II benefits under the Social Security Act on September 14, 2010, with an alleged onset of disability beginning on April 16, 2010. *AR* at 141-42.[1] Plaintiff alleged disability due to bipolar disorder, borderline personality disorder, obsessive compulsive disorder, post-traumatic stress disorder ("PTSD"), anxiety, high blood pressure, back problems, arthritis, heel spurs, and muscle spasms. *Id.* at 175. Her claim was denied initially on March 25, 2011, and upon reconsideration on March 29, 2012. *Id.* at 82, 90.

---

[1] Documents 16-1 through 16-18 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

Administrative Law Judge Frederick E. Upshall, Jr. ("the ALJ") held a *de novo* hearing on November 14, 2012, at which a vocational expert testified and Amanda Hobbs represented Plaintiff.  *Id.* at 32-74.  On February 1, 2013, the ALJ issued his Decision, determining that Plaintiff was not disabled.  *Id.* at 11-25.  Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council; however, the Council declined this request on April 23, 2013.  *Id.* at 1-4.  As such, the ALJ's Decision became the final decision of the Commissioner.  *Doyal v. Barnhart*, 331 F.3d 758, 459 (10th Cir. 2003).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner is required to use a five-step sequential evaluation process to determine eligibility for benefits.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period. *AR* at 13.  Although Plaintiff reported working as a tax preparer from February 1, 2011 until April 15, 2011, the Administration determined that this employment represented an unsuccessful work attempt, and the ALJ concurred in those findings.  *Id.*  At Step Two, the ALJ determined that Plaintiff had the severe impairments of bilateral knee osteoarthritis, obesity, PTSD, and bipolar disorder.  *Id.*  At Step Three, the ALJ concluded that Plaintiff's impairments, individually and in combination, did not meet or

medically equal the regulatory "listings."  *Id.* at 14.  At Step Four, he assessed Plaintiff's

residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform

"light work as defined in 20 CFR 404.1567(b) except she can never climb ladders,

ropes, or scaffolds; she can occasionally climb ramps and stairs, stoop, crouch, kneel,

and crawl; she is limited to work involving no interaction with the public and in which any

interaction with the public is incidental  to the work performed; and she is limited to work

requiring no tandem tasks with co-workers."  *Id.* at 16.   The ALJ also determined that

Plaintiff could not perform her past relevant work.  *Id.* at 23.   However, at Step Five, the

ALJ determined that jobs existed in the national economy that Plaintiff *could* perform.

*Id.* at 24.  Accordingly, the ALJ determined that Plaintiff was not disabled.  *Id.* at 25.

Plaintiff alleges that the ALJ erred at Step Four by failing "to account for his own

finding that Plaintiff had a marked, or disabling, level of impairment with respect to

social functioning" when he determined Plaintiff's mental RFC.  *Doc. 23* at 5.

Additionally, Plaintiff alleges that the ALJ failed to "meet even the minimum

requirements for completeness and detail required by unambiguous Agency policy."  *Id.*

at 9.  Finally, Plaintiff alleges that the ALJ did not properly discuss the factors for

assessing her credibility and drew conclusions contrary to evidence.  *Id.* at 12.

## II.    Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and

whether his decision is supported by substantial evidence.  *Keyes-Zachary v. Astrue,*

695 F.3d 1156, 1161 (10th Cir. 2012).  A deficiency in either area is grounds for

remand.  *Id.*  Substantial evidence is more than a "mere scintilla."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971).  "It means such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion."  *Id.*  The Court may not

reweigh the evidence, substituting its own discretion for that of the Commissioner.  *See*

*Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

III.    Analysis

**A.  The ALJ's Mental RFC Finding is Supported by Substantial Evidence Notwithstanding his Finding of Marked Difficulties in Social Functioning at Step Three.**

An ALJ must determine, at Step Three, whether the objective medical evidence

shows that a claimant satisfies the criteria of one or more listed impairments.  *See* 20

C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App. 1.  The "Listing of

Impairments" ("Listings") enumerates the conditions considered to be severe enough to

prevent the claimant from performing any gainful activity.  20 C.F.R. §§ 404.1525(a),

416.925(a).  A claimant is *per se* disabled if her disability is equal to or more severe

than an impairment in the Listings.  *Knipe v. Heckler*, 755 F.2d 141, 146 (10th Cir.

1985).

At Step Three it was Plaintiff's burden to demonstrate the presence of a

particular mental disorder, as described in the "A" criteria of Listings 12.04 and12.06,

and to establish that the impairment-related functional limitations were incompatible with

the ability to do any gainful activity in the "B" or "C" criteria of these Listings.  *See* 20

C.F.R. pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.04 & 12.06.  The ALJ found that Plaintiff

did not satisfy the "B" or "C" criteria of the Listings, however.  *AR* at 14-15.  The "B"

criteria for both Listings required Plaintiff to show that her impairment resulted in at least

two of the following:  "1) Marked restriction of activities of daily living; 2) Marked

difficulties in maintaining social functioning; or 3) Marked difficulties in maintaining

concentration, persistence, or pace; or 4) Repeated episodes of decompensation, each

of extended duration."  20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 12.04B, 12.06B.

The ALJ determined that while Plaintiff had only mild limitations in her activities of

daily living and in her concentration, persistence and pace, she had *marked* difficulties

in social functioning.  *AR* at 15.  Even so, because Plaintiff's mental impairments did not

cause at least two marked limitations or one marked limitation and repeated episodes of

decompensation, each of extended duration, the ALJ concluded that the paragraph B

criteria were not satisfied.  *Id.*  Having reached this decision, the ALJ explained as

follows:

> [t]he limitations identified in the 'paragraph B' criteria are not a residual
> functional capacity assessment but are used to rate the severity of the
> mental impairments at steps 2 and 3 of the sequential evaluation process.
> The mental residual functional capacity assessment used at steps 4 and 5
> of the sequential evaluation process requires a more detailed assessment
> by itemizing various functions contained in the broad categories found in
> paragraph B of the adult mental disorders listings in 12.00 of the Listing of
> Impairments (SSR 96-8p).

*Id.*

Notably, "an assessment of [a claimant's] RFC complements the functional

evaluation necessary for paragraphs B and C of the listings by requiring consideration

of an expanded list of work-related capacities that may be affected by mental disorders."

20 C.F.R. Part 404, Subpt. P, App. 1, § 12.00(A).  Plaintiff suggests that "*every*

limitation described as part of the 'paragraph B criteria' must be translated into a

detailed assessment and limitation in the RFC finding."  *Doc. 23* at 5-6.  She further

insists that the ALJ did not properly assess *all* of her individual impairments and

limitations, because he did not address her inability to tolerate interaction with

supervisors.  *Doc. 23* at 7.

When a plaintiff suffers from a severe mental impairment that does not meet the Listings, the consideration of her mental RFC must include an assessment of the ability "to interact appropriately with the public, supervisors, and co-workers." *Flores v. Apfel*, 242 F.3d 388 (10th Cir. 2000).  Here, there is no question that the ALJ's mental RFC finding directly addressed aspects of Plaintiff's limitations in social functioning.  He concluded as follows:  "[a]fter careful consideration of the entire record, I find that [Plaintiff] has the residual functional capacity to perform light work . . . [but] is limited to work involving no interaction with the public and in which any interaction with the public is incidental to work performed; and she is limited to work requiring no tandem tasks with co-workers."  *AR* at 16.  The RFC finding does not, however, include any limitations as to Plaintiff's interaction with supervisors.

Plaintiff contends that the ALJ failed to reconcile his own finding of "marked" social limitations, which he determined at Step Three, with his mental RFC finding at Step Four.  While it is true that the mental RFC assessment used at Steps Four and Five is a more detailed assessment of functions contained in the broad categories found in paragraph B, the Court does not agree that a finding of "marked" limitations in social functioning at Step Three somehow necessitates the inclusion of particular limitations as to all aspects of social functioning – including interaction with the public, co-workers, and supervisors – in an RFC finding.  Plaintiff does not reference any case that stands for such a proposition, and the Court is not aware of any such authority.  Moreover, although the ALJ decided not to restrict Plaintiff's interaction with supervisors in her mental RFC finding, it is clear that he considered this aspect of Plaintiff's social functioning, as he posed a hypothetical to the vocational expert for an individual who

"would likely respond inappropriately to any instructions or criticisms by a supervisor." *AR* at 72.

Plaintiff insists that in omitting limitations as to Plaintiff's interaction with supervisors, the ALJ essentially rejected a limitation proven in the record without explanation. *Doc. 23* at 7. In support of this contention, Plaintiff relies primarily upon Elizabeth Chiang, M.D.'s February 23, 2011 Mental RFC Assessment. *See id.* In this assessment, Dr. Chiang indicated that Plaintiff had "moderate limitations" in both her ability to get along with coworkers and her ability to accept instructions and respond appropriately to criticism from supervisors. *AR* at 319. In the same assessment, however, Dr. Chiang ultimately concluded that Plaintiff, despite her moderate social limitations, could "understand, remember, and carry out complex instructions, make decisions, attend and concentrate, interact adequately with co-workers and supervisors and respond appropriately to changes in a work setting." *Id.* at 320. As noted by Plaintiff, the ALJ gave "little weight" to the State Agency psychological consultants' opinions that Plaintiff did not have problems interacting adequately with coworkers and supervisors, including the opinion of Dr. Chiang, because "new evidence" suggested more significant limitations in the area of social functioning. *Id.* at 23. Thus, based on other evidence of record, the ALJ considered Plaintiff to be more limited in aspects of her social functioning than Dr. Chiang opined. Nevertheless, given Dr. Chiang's ultimate conclusion that Plaintiff could interact adequately with supervisors, the Court is unconvinced, on the basis of this report, that the ALJ erred in failing to include a supervisor-related limitation in Plaintiff's mental RFC finding.

The Court does not end its inquiry here, however, but instead considers the entire record to determine whether substantial evidence supports the ALJ's mental RFC finding, taking special account of his omission of any limitation on Plaintiff's interaction with supervisors.  The record indicates that Plaintiff was fired from three different jobs between 2008 and 2009 due to "out of control rages."  *AR* at 311.  At the time she filed for disability in 2011, she was working five to six hours per day at Jackson Hewitt doing tax preparation work.  *Id.*  In her February 15, 2011 report, Sandra Eisemann, Ph.D. indicated that Plaintiff was "interacting with the public, peers and *her supervisor*" at Jackson Hewitt and was "doing well."  *Id.* at 315-16 (emphasis added).   Plaintiff indicated in her Disability Report Form SSA-3368 that she stopped her tax preparation work in April 2011 because "[t]axes season was over," making no mention of difficulties with supervisors.  *Id.* at 176.  In contrast, in her Work Activity Report, Form SSA-821-BK, Plaintiff indicated that she did not get along well with her corkers or her boss at Jackson Hewitt and would "snap" at them.  *Id.* at 232.  The agency interviewer/reviewer deemed Plaintiff's position with Jackson Hewitt an unsuccessful work attempt.  *Id.*

Dr. Eisemann, in her February 15, 2011 Report, concluded that Plaintiff's mental disorders were stabilized with Zyprexa and that Plaintiff was capable of understanding and remembering complex and detailed instructions and could carry out instructions.  *Id.* at 315.  Similarly, James DiGioia, D.O. of San Juan Health Partners Behavioral Health determined, at a May 2011 visit, that Plaintiff was "doing well" on Zyprexa.  *Id.* at 376. On October 25, 2011, Dr. Digioia noted that Plaintiff had self-adjusted her Zyprexa dosage and had purchased Xanax on the street.  *Id.* at 390.  Thereafter, on February 6, 2012, Scott R. Walker, M.D., explained that the Plaintiff had a history of losing jobs

when noncompliant with her medication, but "does well" when compliant with Zyprexa. *Id.* at 418.  Dr. Walker reported that Plaintiff had been "relatively treatment compliant and basically stable." *Id.*

At the November 15, 2012 hearing, Plaintiff testified that she was "stabilized to this day still for the bipolar and anxiety." *Id.* at 48.  She explained, however, that she was "extremely defensive" toward people and in environments with which she is not familiar, (*id.* at 55), and also that she "cycled" weekly with her bipolar disorder with two to three days of the week being "manic" and the balance of the week being "downs," (*id.* at 49).

In his Decision, the ALJ noted that Plaintiff had "consistently high GAF scores." Although Plaintiff's GAF score dipped below 40 in July 2010, when she was hospitalized for verbalizing suicidal ideations, (*id.* at 266, 272-74), her GAF scores otherwise appear to range from 51-64 throughout various assessments (*see, e.g., id.* at 315, 358, 491-92).  A GAF score of 51-60 indicates "moderate symptoms, or "moderate difficulty in social, occupational, or school functioning." *Roybal v. Astrue*, 224 Fed. App'x 843, 845 n.2 (10th Cir. 2007) (referencing the DSM-IV at 34).  A GAF score of 61-70 represents only "[s]ome mild symptoms (e.g., depressed mood and mild insomnia OR some difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers." *Ledford v. Astrue*, 311 Fed. App'x 746, 754 (6th Cir. 2008) (referencing the DSM-IV at 34).  While GAF scores are not dispositive of disability, here, the fact that Plaintiff's scores consistently remained stable supports the ALJs decision not to limit all aspects of social interaction in Plaintiff's mental RFC finding.

In making his RFC finding, the ALJ accounted for Plaintiff's severe PTSD and bipolar disorder and the symptoms related thereto by limiting her to work that did not involve interaction with the public or tandem tasks with coworkers.  This Court cannot say that the ALJ's mental RFC finding is unsupported by substantial evidence absent a limitation as to Plaintiff's interaction with supervisors.  Although the record contains some indication that Plaintiff had difficulty interacting with authority figures, (*AR* at 213, 222), and that there were times that she would "snap at . . . her boss," (*id.* at 232), that evidence originates primarily from Plaintiff's own statements, not from the opinions of medical professionals.   Notably, as discussed hereinafter, there is substantial evidence to support the ALJ's determination that Plaintiff was not credible.  Given the strong negative credibility determination by the ALJ, the Court cannot say that evidence of Plaintiff's difficulty tolerating supervision overwhelms the evidence supporting the ALJ's mental RFC finding.

In sum, substantial evidence of record suggests that, although Plaintiff retained significant limitations in her social functioning, which the ALJ acknowledged in his mental RFC finding by precluding work requiring interaction with the public or tandem tasks with co-workers, her mental disorders were relatively stabilized with Zyprexa and did not require an additional limitation as to Plaintiff's interaction with supervisors

**B.  The ALJ Applied the Correct Legal Standards to his Credibility Determination, and His Determination is Supported by Substantial Evidence.**

Plaintiff contends that the ALJ's credibility determination was "decidedly selective" and "does not even arguably discuss the factors set forth in the regulations.

*Doc. 23* at 13, 15.  Additionally, she contends that the credibility conclusions drawn by

the ALJ were "contrary to evidence."  *Id.* at 12.

Social Security Ruling ("SSR") 96-7p provides guidance in assessing the

credibility of an individual's statements, including factors that "the adjudicator must

consider in addition to the objective medical evidence when assessing the credibility of

an individual's statements."  SSR 96-7p, at *3.  These factors include 1) the individual's

daily activities; 2) the duration, frequency, and intensity of the individual's symptoms; 3)

factors that precipitate and aggravate the symptoms; 4) any medication the individual

takes to alleviate symptoms; 5) treatment, other than medication the individual receives

for relief of symptoms; and 6) any other factors concerning the individual's functional

limitations and restrictions due to pain or other symptoms.  *Id.*  SSR 96-7p also

provides:

> [a]sessment of the credibility of an individual's statements about their . . .
> symptoms and about the effect the symptoms have on his or her ability to
> function must be based on consideration of all the evidence in the case
> record.  This includes, but is not limited to:
>
>   * The medical signs and laboratory findings;
>
>   * Diagnosis, prognosis, and other medical opinions provided by treating
>     or examining physicians or psychologists and other medical sources;
>     and
>
>   * Statements and reports from the individual and from treating or
>     examining physicians or psychologists and other persons about the
>     individual's medical history, treatment and response, prior work record
>     and efforts to work, daily activities, and other information concerning
>     the individual's symptoms and how the symptoms affect the
>     individual's ability to work.

*Id.* at *5.  The Ruling further advises that a "strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the record."  *Id.*

In evaluating ALJs' credibility determinations, the Tenth Circuit has insisted on an "objectively reasonable explanation over mere intuition"; yet it does not require ALJs to address the evidence bearing on each factor relevant to a credibility determination or even to recite the general factors considered in making a credibility determination.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  Instead, an ALJ must "set forth the specific evidence he relies on in evaluating the claimant's credibility."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  An ALJ's "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  *Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009).

Here, the ALJ determined unequivocally that Plaintiff "was not a credible witness."  *AR* at 22.  He noted that although Plaintiff testified to extreme hip and back problems, these issues were not prominently mentioned in her medical records.  *Id.* Further, the ALJ explained that while Plaintiff described enjoying activities such as camping and riding motorcycles, these activities were inconsistent with allegations of an inability to sit, stand, or walk for more than brief periods.  *Id.*  With regard to Plaintiff's mental impairments, the ALJ noted that "while [Plaintiff] complains of frequent cycling and disabling mental impairments, the record shows consistently high GAF scores, not reflective of her allegations."  *Id.*  The ALJ also noted that Plaintiff's records showed non-compliance with treatment and self-adjustment of medication.  *Id.*

Most notably, the ALJ discussed medical records that were directly contrary to Plaintiff's testimony at the November 15, 2012 hearing before him.  At the hearing, Plaintiff testified that she had been alcohol-free for one and a half years.  *AR* at 62-63. The medical records from Plaintiff's treating medical professionals, in contrast, referenced ongoing alcohol use, often reported to be on a daily basis, in 2011 and 2012. While Plaintiff testified at the hearing that there must have been a miscommunication to her medical providers concerning ongoing alcohol use, maintaining that she had not used alcohol for a year and a half, (*id.* at 62-63), the medical records do not support any such miscommunication.  For instance, an office note from Sage Family Medicine, on July 25, 2012, indicates that Plaintiff "is concerned about her excessive alcohol consumption and is very tearful when discussing her desire to stop drinking she tells me that she would like to stop drinking in spite of her enjoyment of drinking.  She does drink daily and at this point I feel any discontinuation of alcohol would need to be closely monitored."  *Id.* at 478.  Another office note from Sage Family Medicine on August 27, 2012, indicates that Plaintiff's "Current alcohol use one PINT 100 proof daily FOR THE PAST 4 YRS. Presently she has not had any alcohol for one week."  *Id.* at 482.  Yet another office note from Desert View Family Counseling Services, on October 15, 2012, indicates that "[o]n June 30th, 2012 [Plaintiff] celebrated 10 years with her boyfriend but he went to Albuquerque and client used methamphetamine and drank alcohol."  *Id.* at 489.  That same note explains that "[Plaintiff] struggles with telling the truth about usage amounts and recent attempts at abstaining."  *Id.*

The ALJ provided a comprehensive discussion of the evidence of record that supported his negative credibility assessment of Plaintiff, connecting his conclusions

with objective evidence.  Chief among his considerations were medical records that were contrary to Plaintiff's representations at the hearing concerning her alcohol use, and which even directly indicated that Plaintiff "struggles with telling the truth about usage amounts and recent attempts at abstaining."  Blatant contradictions between medical records and a claimant's testimony given under oath at an administrative hearing are a telling indication that the claimant lacks credibility.  *See* SSR 96-7p, at *5.

Having reviewed the ALJ's credibility determination, the Court concludes that the method used by the ALJ to reach this determination was consistent with the law of this circuit and that he properly connected his conclusion to objective evidence. Furthermore, the Court cannot agree with Plaintiff's unsupported contention that the ALJ's credibility determinations were "contrary to the evidence."  Plaintiff primarily refers to her own statements in the record concerning difficulties in the area of social functioning.  *See Doc. 23.*  But Plaintiff's subjective statements regarding symptoms of her physical and  mental impairments hardly render the ALJ's negative credibility determination "contrary to evidence."  Rather, there is ample  evidence in the record to support the ALJ's conclusion that Plaintiff was not credible based upon the lack of objective medical evidence to support her complaints, her daily activities, her ability to successfully treat her impairments with medication, and her contradictory statements concerning alcohol use.  Because the ALJ's credibility determination concerning Plaintiff is supported by substantial evidence, it deserves deference by this Court.  *See White,* 287 F.3d at 909 (10th Cir. 2001) (emphasizing that credibility determinations "'are peculiarly the province of the finder of fact' and should not be upset if supported by substantial evidence.")

## IV.     Conclusion

For all of these reasons, the Court finds that the ALJ's mental RFC finding and the negative credibility determination of Plaintiff were products of proper legal standards and supported by substantial evidence.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand *(Doc. 23)* be denied and the decision of the Commissioner affirmed.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).
 **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE